UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                              PLAINTIFF

v.                                                                                  CRIMINAL ACTION NO. 3:05CR-36-S

EDDIE ALLMON                                                                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the defendant, Eddie Allmon, to suppress evidence seized on August 26, 2004 during a search of the defendant's residence. He also seeks suppression of a statement he made to his probation officer after his August 26 arrest, but prior to receiving the *Miranda* warnings.

On August 9, 2004, Allmon was sentenced in Jefferson Circuit Court on a charge of trafficking in a controlled substance. He was placed on probation for a period of five years. As a condition of his probation, he was to permit any probation officer to visit his home at any time. Allmon's probation officer, Ravi Buckner, informed Allmon that he would receive such a visit within thirty days.

On August 26, 2004 in the evening, Officer Bucker, accompanied by Detective Michael Fields, a second detective, and a second probation officer, visited Allmon's residence. After being admitted to the residence, Officer Buckner told Allmon that he needed to see his room. Allmon took three of the officers to the basement while the fourth remained upstairs. Officer Buckner asked if there was anything on the premises that he should know about, such as drugs or weapons. Allmon stated that there was not. Officer Buckner asked Allmon if he minded if they looked around. Allmon consented. Buckner and Fields both testified that Allmon seemed nervous and became more agitated as they searched his living quarters. When they failed to find any contraband, Allmon was

again asked if there were any prohibited items in the room. Officer Fields remarked that they would get a K-9 dog to search the room and if contraband was found, Allmon would be charged. Allmon then produced a crack pipe and a plastic bag containing crack cocaine. Upon his arrest, Fields seized one hundred sixty-four dollars from Allmon's pockets.

Once Allmon produced the contraband the process of arresting him for possession of those items began. Allmon was cooperative with the officers and was not handcuffed until he was taken upstairs in the residence. It was at that time that he was handcuffed and read the *Miranda* warnings.

Prior to the time that he was read his rights, Officer Buckner made a statement to Allmon to the effect that his probation had just begun and that this was no way to start his probation. He either asked Allmon or made a rhetorical comment inquiring why Allmon would have begun selling drugs again. This statement or comment elicited the response from Allmon that all he could do was sell crack cocaine, since he could not get a job because of his criminal record.

Allmon seeks to suppress the items seized from his residence and his person. He also seeks to suppress the statement he made prior to receiving the *Miranda* warnings.

As a probationer, Allmon had a diminished expectation of privacy in his residence. *See*, *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). Allmon was aware that a condition of his probation was that he was subject to search of his residence or person if he was reasonably suspected of possessing contraband. Officer Buckner made this first home visit within thirty days after the commencement of the probationary period. Upon being admitted into the residence, Buckner told Allmon that he needed to see his room and was taken there. Buckner asked Allmon if there was anything on the premises that he should know about, such as drugs or weapons. Allmon responded "no." However, these experienced officers, present on this unscheduled home visit, reasonably questioned the truthfulness of Allmon's response in light of his agitated behavior while in his living quarters. Allmon agreed to permit the officers to search his room. There is no evidence in the record that suggests that this consent was not knowing, intelligent and voluntary.

There was nothing about the circumstances or the request to search from which coercion or pressure could be inferred.

The policy of Kentucky Corrections requires its officers to have offenders sign a form giving consent to the search. The policy states specifically that the execution of the form is for the officer's "protection and documentation." Policy Statement on Search; Seizure; Chain of Custody; Disposal of Evidence, VI(1)(B)(1). The same provision also states however, that "it shall be considered a lawful and reasonable search if the consent is intelligently, freely and voluntarily given and is clear and explicit." *Id.* Thus Kentucky Corrections' policy itself indicates that it is the circumstances of the consent, not the execution of a form, which render a search lawful and reasonable. We conclude that the initial search of Allmon's living quarters was based upon reasonable suspicion and informed and voluntary consent by Allmon. However, this search yielded no contraband.

Allmon was asked a second time whether there was anything prohibited on the premises. At this point the detective stated that a K-9 dog could find anything that might be concealed. Allmon then retrieved a bag of crack and a crack pipe and turned them over to the officers. The officers did not discover the contraband in a second search of the premises. Rather the items were retrieved and given to them by Allmon himself when they suggested that a more through search with a K-9 dog could ferret out any contraband that they had been unable to find. Thus the question of voluntariness of consent to search is wholly inapplicable to the seizure of the crack and crack pipe.

We find that the statement made by Allmon prior to being given the *Miranda* warnings was elicited by officer Buckner either through a direct question or a rhetorical comment. Officer Buckner sought an explanation for Allmon's drug dealing so close on the heels of his sentence and probation. We must conclude from the circumstances that the discussion, brief though it was, was initiated by Buckner to elicit a response from Allmon immediately after he was placed under arrest.

The United States Supreme Court noted in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) that "[t]o limit the ambit of *Miranda* to express questioning would

'place a premium on the ingenuity of the police to devise methods of indirect interrogation, rather than to implement the plain mandate of *Miranda.*' [citation omitted]." 100 S.Ct. at 1689, n. 3. The court went on to note, however, that "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible evidence." 100 S.Ct. at 1689.

Once Allmon produced the contraband to police he was placed under arrest. Although he was not handcuffed he was clearly not free to leave. Although a probation officer performing routine duties is not generally found to be an agent of the police, we find that the particular facts herein require another conclusion. The United States cited the unpublished 6th Circuit opinion of *Williams v. Jones*, 117 Fed.Appx. 406 (6th Cir. 2004) to support its contention that Buckner's status as a probation officer rendered any questioning of Allmon free from the strictures of *Miranda*. The United States concedes that the case is not on point and that it has found no other controlling law.

We find a number of significant distinctions between the facts underlying the ruling in *Williams* and the circumstances surrounding Allmon's arrest. In *Williams*, a juvenile probation officer engaged in a conversation with a fifteen-year-old arrestee the day after the arrest. Remarks were first made by the juvenile to which the officer responded "what's up?" The juvenile then recounted some details of his crime. The Court of Appeals stated that "Miranda warnings are not required any time a suspect is in custody in a technical sense and converses with someone who happens to be a government agent." *Id.,* at*8. The Court of Appeals agreed with the District Court and Michigan Court of Appeals that *Miranda* warnings were not required in that instance because the juvenile probation officer was not a police officer, nor was he working with or at the request of the police. *Id.* at *7.

By contrast, in this case Officer Buckner began the encounter with Allmon in his capacity as a probation officer. Once an arrest was made, however, Buckner's responsibilities as probation officer could no longer be clearly separated from those of the officers in the criminal investigation attendant to Allmon's arrest. Buckner's question came during the arrest of Allmon, and not a day

- 4 -

later at the jail, as in *Williams*. Buckner's probationary responsibilities did not cease. However, he initiated interaction with Allmon that was directed at eliciting an explanation for criminal activity. This is a far cry from a response of "what's up?" to an arrestee's remarks made at a time far removed from the arrest and not in the presence of law enforcement officers. In a situation such as in our case where the legal landscape changed during the course of the encounter, the imposition of the *Miranda* warnings would have indicated to Allmon that the probationary inquiry had ceased and the arrest and criminal investigation had begun. The court concludes for these reasons that Allmon's uncautioned statement must therefore be suppressed.

For the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Eddie Allmon to suppress evidence is **GRANTED IN PART AND DENIED IN PART**. The motion **is GRANTED to the extent that it seeks suppression of the oral statement made by Allmon after his arrest but prior to receiving the *Miranda* warnings.** In all other respects the motion is **DENIED**.